TARTAK BROTHERS, INC., Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. 12104. Submitted February 29, 1960.—Decided May 12, 1960.

*Hiram R. Cancio, Secretary of Justice, (J. B. Fernández Badillo, former Secretary of Justice and Oscar N. Souffront, Assistant Attorney General,* on the brief) for appellant. *Celestino Iriarte, F. Fernández Cuyar* and *H. González Blanes* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Secretary of the Treasury notified respondent of deficiencies in its income tax for the taxable years 1946 to 1951. Said deficiencies arose when upon readjusting respondent's inventories the Secretary of the Treasury eliminated from the costs of the merchandise the amount of the premiums of the marine insurance paid to insurance companies not authorized to do business in Puerto Rico.

The taxpayer appealed to the Superior Court and after a trial was held on the merits, said court rendered judgment setting aside the aforesaid deficiencies.

The facts, as found proved by the trial court, show the following:

". . . Said evidence reveals, as findings of fact, that plaintiff bought merchandise through orders placed with the manufacturers or suppliers in the United States. They ship the merchandise and when it arrives plaintiff pays the amount thereof and receives it. If the merchandise does not arrive, plaintiff does not pay for it, and that part which arrives deteriorated is not accepted and it is returned. The invoices and drafts which plaintiff receives with the merchandise, include, in addition to the cost of the merchandise itself, expenses of transportation by land and sea, and insurance, which is a common practice in these operations. Apart from this, plaintiff has no other participation in connection with the merchandise it receives; neither does it require nor contract the insurance of the merchandise, it being immaterial to the plaintiff whether it is insured or not because it pays for the merchandise if it arrives in good conditions but if it does not arrive or arrives in a state of deterioration it does not accept or pay for it.

"From one of the invoices submitted in evidence and marked Exhibit 1 of plaintiff and Exhibit A of defendant, and introduced to show the manner in which plaintiff makes these transactions, it appears that merchandise from the United States was invoiced charging plaintiff $19.29 for insurance plus other charges. Attached to this invoice there is a certificate of marine insurance from the Home Insurance Co., New York, stating that on March 27, 1951, that company insured in favor of the supplier or shipper, the Jackson Manufacturing Co., 136 boxes of furniture for the amount of $6,430 which had been shipped on the vessel

Morning Light under bill of lading of March 27, 1951 from Mobile, Alabama, to San Juan, Puerto Rico. It further certifies that in case of loss the insurance is payable to the order of Jackson Manufacturing Co. upon presentation of the certificate of insurance. Together with said certificate is the corresponding bill of lading for 136 boxes of furniture. We have seen the certificates of insurance attached to the invoices of other shipments and they are all alike, namely, insurance obtained by the supplier or shipper of the merchandise in its own favor." (Pages 6 and 7 of the Judgment Roll.)

The Secretary maintains that the premiums of the marine insurance were not deductible under the provisions of §§ 33 and 17(c) of the Income Tax Act of 1924. Said sections read thus:

"Section 33.—In computing net income no deduction shall in any case be allowed in respect of any of the items specified in section 17."

"Section 17.— . ·

"(c) No amount shall be allowed as deductible which has been paid as a premium, liquidation, or expenses of insurance against any risk, accident or catastrophe, to an insurance company, insurance association, insurance broker or agent not authorized to do business in Puerto Rico."

(Added by Act No. 31, approved April 12, 1941, with retroactive effect to January 1, 1940.)

Actually, it is not a matter, technically speaking, of whether the taxpayer has claimed the premiums of the marine insurance as a deductible item of its net income.[1] Plaintiff could not request such deductions. The reason is obvious. The taxpayer was not a party to the insurance contracts, nor were

---

[1] Pursuant to § 28(a) of the Act, corporations paid the corresponding tax of the amount of the net income in excess of the credits provided in § 34, to wit: The amount received as interest upon obligations of the United States, which is included in the gross income under § 31. Neither § 34 nor other subsequent sections of the Act grant the amount of the insurance premiums as deductible credit of the net income. So that the payment of the insurance is not granted by law as a deductible credit of the taxable net income.

they executed in its favor.    The merchandise was insured by the vendors or suppliers either directly or by means of their agent, and the insurance, in case of damage or loss of the merchandise, was not payable to the taxpayer.    The question is rather limited to determining whether the taxpayer correctly stated in its inventories the cost of the merchandise bought from the manufacturers or suppliers in the United States.    If the amounts are incorrect, because it unduly included as part of the same, items not allowed by the law, then the taxable net income of the taxpayer would be greater than the one it computed, and as a result, a deficiency in its income tax would arise.

Under § 32 (a) corporations were allowed to deduct, when they computed their net income, all the ordinary and necessary expenses paid or incurred during the taxable year in the operation of any industry or business.    On the other hand in computing the net income, § 33 prohibits the corporation to deduct the items specified in § 17, among them the insurance premiums paid to one of the insurance companies not authorized to do business in Puerto Rico.

Under these provisions, if the taxpayer had paid the premiums to insure its merchandise against any risk, accident, or disaster, it could have deducted, in computing the net income, the amount paid as premium to an insurance company authorized to do business in Puerto Rico, as an ordinary and necessary expense paid or incurred in the operation of its business.    See 4 Merten's Law of Federal Income Taxation, 219, 225, § 25.101 and 25.104, and § 101 of the Regulation No. 1 of the Secretary of the Treasury for the Income Tax Act of 1924.    However, that same expense was not deductible from the net income if the premiums were paid to an insurance company not authorized to do business in Puerto Rico, since it is disallowed by § § 33 and 17 of the Act, as they were then in force.[2]

---

[2] Paragraph (c) of § 17 was eliminated from the new Income Tax Act of 1954.

The error of the Secretary of the Treasury consists in having considered that the taxpayer deducted from its net income premiums paid to insure *its merchandise* to insurance companies not authorized to do business in Puerto Rico. The uncontroverted evidence shows that the taxpayer did not take possession of the merchandise bought from the suppliers in the United States, nor became its owner until said merchandise arrived in San Juan in good conditions, was accepted, and its price paid by taxpayer. This price included the cost itself of the merchandise plus the freight charge, marine insurance, and commission of the vendor's or supplier's agent. If the taxpayer did not pay the amount thus determined, it could not acquire the merchandise. (See the uncontroverted testimony of the treasurer of the taxpayer corporation adhered to this opinion as Appendix A.) So that this total cost was the real price that the taxpayer paid for the merchandise in San Juan.

Pursuant to § 8 of the Act of 1924, the taxpayer was compelled to make inventories upon a basis "as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

Respondent's inventories reflected correctly the cost of the merchandise. Therefore, it correctly computed its net income. As a result the deficiencies notified to the taxpayer by the Secretary of the Treasury had no legal basis.

The judgment rendered by the Superior Court shall be affirmed.

Mr. Justice Santana Becerra did not participate herein.

### APPENDIX A
### "TESTIMONY OF EDUARDO TARTAK

"PLAINTIFF:

"Q.—Your name?

"A.—Eduardo Tartak.

"Q.—What is your occupation?

"A.—I am a merchant.

"Q.—Personally or as a corporation?

"A.—As a corporation.

"Q.—What corporation?

"A.—Tartak Bros. Inc.

"Q.—Do you have a position in that corporation?

"A.—Yes sir, treasurer.

"Q.—Since when?

"A.—Since the organization was founded in the year 1942.

"Q.—From the year 1946 to 1951, the years included here, have you been treasurer of the corporation during all that time?

"A.—Yes sir.

"Q.—How do you obtain the merchandise you sell in Puerto Rico?

"A.—Through orders made to the suppliers.

"Q.—Do you place a written order?

"A.—Yes sir, written.

"Q.—How do you obtain the merchandise?

"A.—Once the order has been sent to the supplier, they ship the merchandise and when it arrives we pay for it if it is the one ordered and if it is in good conditions.

"Q.—With regard to the transportation and insurance expenses from the supplier to San Juan which is the domicile of the corporation, who pays the expenses?

"A.—We do.

"Q.—How do you pay them, do you have agents in the United States?

"A.—No.

"Q.—Who takes charge of the merchandise from the supplier to the domicile?

"A.—The supplier himself.

"Q.—What else do you receive besides the merchandise?

"A.—There are drafts accompanying the bills of lading.

"PLAINTIFF:

"Showing you exhibit No. 1, here you place the order with Jackson Manufacturing Co.

"Q.—From whom did you obtain the order?

"A.—From the supplier.

"Q.—Did you intervene in obtaining the insurance policy?

"A.—In no way whatsoever.

"Q.—This insurance policy covers the merchandise from Mobile, Alabama to San Juan, P. R., if there is a loss in the merchandise upon arrival, who is entitled to make the claim?

"A.—The manufacturer.

"Q.—Would you suffer the loss if there was any?

"A.—No sir.

"Q.—Who suffers the loss?

"A.—The supplier.

"Q.—Do you say that if the merchandise is received in bad conditions or different from what you ordered, you reject it?

"A.—We reject it and we leave it on the dock.

"Q.—After leaving it on the dock, who is liable for it?

"A.—The supplier is in charge of claiming for damages or auctioning the merchandise in its present condition.

"Q.—Have you no control over that?

"A.—No sir.

"Q.—Do you have control in choosing the insurance company that covers the risk of the merchandise from the supplier until it reaches San Juan?

"A.—No control.

"Q.—Have you had to intervene in any occasion?

"A.—No.

"Q.—Have you at any time had to insure any part of that merchandise?

"A.—No.

"Q.—Why?

"A.—Because the supplier is the one in charge of making those transactions.

"Q.—It seems to me you originally stated that you had to pay all those expenses?

"A.—We pay it all because it is our opinion that all those expenses are costs of the merchandise.

"Q.—In the invoices you receive, are the insurance and the land freight included?

"A.—They are included also.

"Q.—Do you liquidate the merchandise here on the basis of all the invoices?

"A.—On the total of the most certain cost of the merchandise, marine and land freight, and the insurance.

"Q.—Will you please tell the court if it is discretionary or optional to have the merchandise insured?

"A.—We do not need to have it insured.

"Q.—Is it optional on your part or not?

"A.—No, it is really the supplier who requires it.

"PLAINTIFF:

"That is all.

"DEFENDANT:

"Q.—Do you buy directly from the factory?

"A.—Not from the factory but through the exporting agent.

"Q.—What does Hassman & Bags do?

"A.—It prepares the shipping papers.

"Q.—Have they no relation with the factory?

"A.—That I do not know, I only know that the papers are prepared by Hassman & Bags.

"Q.—Do you buy from Hassman & Bags?

"A.—No.

"Q.—Nonetheless, the papers are prepared by Hassman & Bags?

"A.—Of some suppliers only.

"Q.—Who prepares those of other suppliers?

"A.—There are many agents.

"Q.—Are they agents similar to Hassman & Bags?

"A.—Yes, sir.

"Q.—Do you pay Hassman & Bags for that service?

"A.—They are paid to prepare the papers.

"Q.—Do you pay them to prepare the papers and to have them send the merchandise to P. R.?

"A.—We pay the total sum of the merchandise and the freight.

"Q.—In whose favor is this insurance policy certificate made?

"A.—In the name of Hassman & Bags.

"Q.—Is it not in favor of the factory?

"A.—No, we do not pay any attention to this, all we are interested in is that it says that the cargo will be placed in San Juan so that we can take charge of it.

"PLAINTIFF:

"Witness is referring to a group of invoices made by one importer and we allege that Hassman & Bags are agents of the same supplier.

"DEFENDANT:

"Q.—Who pays Hassman & Bags?

"A.—The supplier and the supplier bills us as is shown there.

"Q.—By whose order?

"A.—By orders placed by us for the merchandise but not for the expenses.

"Q.—Who pays for the service given by Hassman & Bags?

"A.—In this case it was the supplier, then we paid the supplier.

"HONORABLE JUDGE:

"What relation does Hassman & Bags have with the supplier?

"PLAINTIFF:

"They are the manipulators of the exports for that exporter.

"DEFENDANT:

"From the invoice itself it appears that there are others who are exporters. But is the insurance policy made to the name of Hassman & Bags who is the independent exporter?

"PLAINTIFF:

"Hassman & Bags is not the importer, they are the ones in charge of picking up the merchandise at the railroad, from there they take it to the ship, insure it, pay for the cost of the freight, the insurance, and then they charge the commission of their work to the exporter. They are in charge of all the paper work.

"DEFENDANT:

"Q.—Are those the invoices?

"A.—The commission of Hassman & Bags is included.

"Q.—Which is the buying system of your corporation?

"A.—We buy in different ways.

"Q.—Do you buy invoices F O B New York?

"A.—Yes, sir.

"Q.—Do you make purchases F O B Mobile?

"A.—To any port or factory, Chicago or anywhere.

"Q.—Your buying system, isn't it Cif?

"A.—Many times it is Cif.

"Q.—On other occasions is your system F O B in New York on the factory's account, is that correct?

"A.—Correct.

"HONORABLE JUDGE:

"Is there any difference with regard to the insurance, or is it a different situation when you buy under one system or the other?

"WITNESS:

"There is none. The supplier has to insure the merchandise one way or another. When the supplier decides to give out merchandise Cif they make an estimate of how much the merchandise is going to cost to reach the port here.

"Q.—And the marine insurance?

"A.—We pay it ourselves because it must always be added to the cost of the merchandise.

"Q.—You add it here to the cost of the merchandise but not to the cost of the factory. Do you buy directly from the factory and then the factory sends the merchandise F O B New York?

"A.—Yes, sir.

"Q.—And why does it send it F O B New York?

"A.—F O B New York has no land freight.

"Q.—Is it that they do not charge the land freight from the factory to the New York Port?

"A.—No sir, that freight does not have to be paid.

"Q.—What happens afterwards?

"A.—Once it is in port, what remains as additional expense is the marine freight or the marine insurance.

"Q.—Is there an insurance in both cases?

"A.—There must always be an insurance.

"DEFENDANT:

"Q.—When the merchandise is sent to you F O B New York, does the factory's liability cease when it delivers the merchandise to the port in New York?

"A.—No, the merchandise has to arrive here for us to accept and pay for it.

"HONORABLE JUDGE:

"Q.—In all the operations that might be involved in this litigation, have you at any time paid for the merchandise in New York or when it arrives in Puerto Rico?

"A.—Always when it arrives in Puerto Rico.

"Q.—I am referring to all the specific operations, have some of them been paid in New York, or in any place other than San Juan?

"A.—Always in San Juan.

"DEFENDANT:

"Q.—Merchandise sent F O B New York, who takes charge of that merchandise when it is delivered at the New York port?

"A.—The agent upon making the shipment of the supplier who is at the particular port. The forwarding agent.

"Q.—Is that forwarding agent your agent?

"A.—No, he is the supplier's agent." (Stenographic Record, pages 5–14.)